IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONNA SMITH, | § | |
| | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CAUSE NO. _____ |
| | § | |
| THE KROGER COMPANY AND | § | |
| KROGER TEXAS L.P., | § | |
| | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Donna Smith brings this lawsuit against The Kroger Company and Kroger Texas L.P. (jointly "Kroger") for injuries she sustained as a Kroger employee. Smith's causes of action and the facts supporting them are set out below:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different states.

2.  Plaintiff Donna Smith is a citizen of the State of Texas. She resides in Montgomery County, Texas and considers it to be her permanent home. Thus, Texas is Ms.

Smith's domicile for purposes of diversity.

3.    Defendant The Kroger Company is a citizen of the State of Ohio where it was incorporated. Ohio is also where The Kroger Company maintains its principal place of business according to the company's website and public statements.

4.    Defendant Kroger Texas L.P. is a limited partnership. KRGP, Inc. is the general partner of Kroger Texas L.P. and KRLP, Inc. is the limited partner of Kroger Texas L.P. Both are incorporated in the State of Ohio with their respective principal places of business in the State of Ohio.

5.    Venue is proper in the United States District Court for the Southern District of Texas, Houston Division because the events giving rise to this action took place in Montgomery County, Texas.

## PARTIES

6.    Defendant The Kroger Company is a foreign for-profit corporation with a principal place of business in the State of Ohio doing business in the State of Texas. It may be served by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

7.    Defendant Kroger Texas, L.P. is a foreign for-profit limited partnership formed in the State of Ohio doing business in the State of Texas. Its general and limited partners are corporate citizens of the State of Ohio that maintain principal places

of business in Ohio. It may be served by serving its registered agent, Corporation

Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th

Street, Suite 620, Austin, Texas 78701-3218.

8.    Plaintiff Donna Smith resides in Conroe, Montgomery County, Texas.

## FACTS

### A.    Kroger Fuel Centers

9.    The Kroger Defendants operate grocery stores throughout Texas. Some of those

grocery stores also have Kroger fuel centers, which are also operated by Kroger

and staffed with Kroger employees.

10.    A typical Kroger fuel center is located in the same parking lot as one of Kroger's

grocery stores. At the heart of each fuel center is small building that Kroger refers

to as a *sales kiosk*. That kiosk is surrounded by fuel pumps on either side as well as

some exterior merchandise fixtures.

11.    Most Kroger fuel center sales kiosks range in size from 120 to 240 square feet.

There is a point-of-sale area where Kroger's employee either sits or stands behind

a glass window surrounded on every side by racks of merchandise, computer

equipment, lottery ticket dispensers, tobacco products, and fuel monitors.

12.    Countertops align the front and side walls, intruding on the physical space

available for the employee and a stool or chair. The area underneath the cabinets

is packed with items.

13.     A commercial anti-fatigue mat covers the concrete floor.

14.     A door from the point-of-sale space, opens into space that includes a bathroom, mop sink, additional computer/mechanical equipment, boxes of merchandise inventory, and cleaning supplies. The door to enter and exit the kiosk itself is located on one of the side walls in the space.

15.     Kroger staffs its sales kiosks with one fuel center attendant per shift. The attendant's supervisors, managers, and co-workers are in the grocery store across the parking lot.

16.     Fuel center attendants have multiple job responsibilities and contact from their supervisors as well as assistance is very limited. Those job responsibilities include, but are not limited to, the following:

    a.  <u>Customer Service</u>- Attendants must greet customers, respond to questions, and assist in a courteous and helpful manner.

    b.  <u>Stocking the Fuel Center</u>- Attendants must receive and restock merchandise shelves within the kiosk as well as items located on displays outside of the kiosk. Items may be as heavy as fifty pounds.

    c.  <u>Operate Cash Registers and Computers/ Transact Sales</u>- Attendants must operate computerized cash registers as well as be able to process fuel, merchandise, and lottery orders quickly and accurately. They must be able to operate all equipment that pertains to customer checkout including, but not limited to, the credit/debit card scanner, the lottery terminal, and the check reader.

    d.  <u>Balancing and Cash Management</u>- Attendants are responsible for accurately balancing sales and cash in the point-of-sale computer system and completing a daily report.

    e.  <u>Fuel Equipment</u>- Attendants must have a working knowledge of all fuel

station equipment, including but not limited to, tank monitoring devices and fuel dispensers.

f. <u>Cleaning</u>- Attendants are required to clean and maintain the kiosk floor, windows, work surfaces, and equipment as well as fuel dispensers, vending machines, trash receptacles, customer surfaces, and parking areas outside the kiosk.

**b. Kroger Valley Ranch's Fuel Center**

17. Kroger Valley Ranch located at 22030 Market Place Drive in New Caney, Texas is one of the Kroger grocery stores that has a fuel center across the parking lot. It has fourteen fuel pumps and a sales kiosk that measures under 300 square feet.

18. The picture below, taken from Google street view, shows Kroger Valley Ranch's tiny fuel center kiosk.



19. The entire interior is crammed with equipment and merchandise and supplies just as described above. Each Kroger attendant that staffs the kiosk has to maneuver inside the confined space to carry out their daily job responsibilities. Kroger supervisors as well as other employees work from the store in the background.

20. Attendants at the Valley Ranch fuel center are responsible for the tasks detailed

above, including cleaning and maintaining the sales kiosk each shift.

21.    Cleaning the inside of the sales kiosk at Kroger Valley Ranch requires the kiosk floor, windows, work surfaces, and equipment. To clean the floor inside the point-of-sale area, the fuel attendant has to move the employee stool into the back area, pull up the anti-fatigue mat, lean the mat against the protruding countertops, maneuver a broom into the space to sweep, maneuver the broom out of the space, maneuver a mop into the space to mop, maneuver the mop back out of the space, and replace the antifatigue mat onto the floor space where the attendant is standing.

22.    All of that activity has to take place while surrounded by counters with equipment, lottery ticket and tobacco dispensers overhead, and walls of merchandise. Kroger does not provide assistance or supervision for these tasks. Instead, fuel center attendants have to navigate the task alone.

23.    Kroger does not provide Valley Ranch fuel center attendants with special training for working and cleaning in the confined and physically restricting interior of its fuel center sales kiosk. And it does not provide equipment to safely store items like the anti-fatigue mat off of the floor so that the areas inside of the fuel center can be cleaned safely.

24.    The cleaning supplies, including the size of the mops and brooms, provided by Kroger for cleaning the sales kiosk floor are not reasonably safe for cleaning the

floors in a confined area.

**c.     Donna Smith's Fall**

25.     Defendants hired Donna Smith to work as an attendant at the Kroger Valley Ranch fuel center in early January 2019.

26.     A Kroger supervisor or employee onboarded Donna and gave her an overview of the sales kiosk and her job responsibilities. Donna was told those responsibilities included included cleaning the sales kiosk at the end of her shift and that cleaning the sales kiosk included cleaning the interior concrete floors.

27.     Kroger's employee onboarding Donna demonstrated cleaning the floors inside the kiosk's point-of-sale area. As part of the demonstration, the co-employee pushed the employee stool around in the area so that she could lift the anti-fatigue mat off the concrete floor and lean it (the mat) against the countertop that protruded from the walls. With the mat leaning against the countertop, the co-employee swept and mopped the floor using cleaning supplies stored in the cluttered back area of the kiosk.

28.     Kroger's supervisor did not warn Donna that repositioning the employee chair and leaning the mat was dangerous or put Donna at risk of falling while maneuvering with the broom and mop. Donna was expected to perform the task of cleaning the concrete floors inside the kiosk by herself without help from co-workers or supervision.

29.   Kroger did not provide Donna with a safe way to store the antifatigue mat, the chair, or other impediments in the confined space while she cleaned inside.

30.   The only training Donna received on cleaning in the confined and cluttered kiosk was the demonstration from the Kroger supervisor that included leaning the mat upright against the countertop. Donna was not instructed on safety as it related to cleaning inside the kiosk and Kroger did not provide Donna with any safety regulations for the task.

31.   The Kroger employees that onboarded Donna showed and/or instructed Donna on cleaning the kiosk area in an unsafe manner. On information and belief, those employees were themselves untrained, unsupervised, and/or incompetent. This belief is based in part on the dangerous manner in which Donna was showed to clean.

32.   On or about February 17, 2019, while in the course and scope of her employment with Defendants, Donna Smith suffered severely painful and disabling injuries to her spine and body generally.

33.   Those injuries occurred while she was cleaning the inside of the crammed and cluttered sales kiosk as Kroger required her to do before the end of her shift that day. Donna pushed the employee stool so that she could lift the anti-fatigue mat off the floor. She leaned the mat against the protruding countertops as she'd been shown to do by Kroger's employee so that she could sweep and mop.

34. Donna was attempting maneuver in the space and retrieve the mop from the back area of the kiosk when she tripped on the mat and fell to the concrete floor.

35. The fall was disorienting. Donna tried to wiggle her toes when she came to her senses because she was not sure how badly she was hurt. She knew her back was hurt and could not get herself off of the floor or call for help. Donna was alone.

36. Eventually a customer saw Donna through the glass window and called for help. Donna was still on the floor when Kroger employees responded.

37. Donna's injuries were severe. The fall fractured her spine in multiple places. She was unable to return to work at Kroger because of the injury and Kroger terminated her as a result.

38. At the time of Donna Smith's injury, Defendants were nonsubscribers to workers' compensation insurance under the Texas Workers' Compensation Act.

## CAUSES OF ACTION

### A.    Count One:  Negligence

39. Plaintiff's negligence claim is based on the facts set out in this Complaint.

40. As nonsubscriber employers, Defendants are responsible for their employees' work-related injuries at common law.

41. At common law, employers owe certain nondelegable and continuous duties to their employees who are acting in the course and scope of their employment relationship. Those duties include the duties to:

a. Warn about the hazards of employment that are not commonly known to or already appreciated by employees,

b. Supervise activities,

c. Furnish a reasonably safe workplace,

d. Furnish reasonably safe instrumentalities with which to work, and

e. Provide necessary equipment, training, or supervision.

42. Donna Smith was acting in the course and scope of her employment with Defendants when she was injured at work. Defendants owed Donna Smith nondelegable and continuous duties while she was acting in the course and scope of her employment with Defendants. Those duties included the duties to:

a. Warn about the hazards of employment that are not commonly known to or already appreciated by employees,

b. Supervise activities,

c. Furnish a reasonably safe workplace,

d. Furnish reasonably safe instrumentalities with which to work, and

e. Provide necessary equipment, training, or supervision.

43. The incident made the basis of this suit and the resulting injuries and damages suffered by Donna Smith were proximately caused by the negligence of the Defendants and/or those for whom Defendants are legally responsible, including but not limited to:

a. Failing to properly train Plaintiff in the proper and safe operation or use of the relevant equipment in the sales kiosk,

b. Failing to properly train Plaintiff to identify, appreciate, and avoid the relevant hazards associated with cleaning the sales kiosk,

c. Failing to warn Plaintiff on the specific hazards associated with leaning the mat on the countertop,

d. Failing to implement reasonable and necessary policies and procedures regarding the relevant operations,

e. Failing to provide Plaintiff with a reasonably safe workplace, and

f. Failing to exercise ordinary care as a reasonably prudent person/company would have done under the same or similar circumstances.

44. These negligent acts and omissions of the Defendants were a proximate cause of Donna Smith's injuries and damages that make the basis of this lawsuit.

45. Defendants were nonsubscribers to workers' compensation insurance under the Texas Workers' Compensation Act. Therefore, Defendants are barred from asserting any common law defenses, including but not limited to any defense based upon any alleged contributory negligence of the Plaintiff, Plaintiff's assumption of the risk of injury or death, or whether the negligence of a fellow servant caused or contributed to Plaintiff's injury.

46. In any event, Plaintiff's injuries were caused/inflicted without any contributing fault or neglect on her part, and solely because of the negligence of the Defendants, their agents, servants, employees, representatives, or others for whom Defendants are legally responsible.

**B.    Count Two:  Premises Liability**

47. Plaintiff's premises liability claim is based on the facts set out in this Complaint.

48. As nonsubscriber employers, Defendants are responsible for their employees'

work-related injuries at common law. Additionally, the law bars Defendants from asserting common law defenses to premises liability claims brough by an employee for injuries sustained during the course and scope of employment.

49. At the time of the above-events, Defendants employed Donna Smith and Donna Smith was acting in the course and scope of her employment with Defendants.

50. As Donna Smith's employers, Defendants owed Donna Smith the same duty a landowner owes to an invitee. That is to use reasonable care to make the premises reasonably safe for the use of the employee. Stated differently, Defendants owed Donna Smith a continuous, non-delegable duty to provide her with a safe workplace.

51. Defendants cannot rely on the "no duty rule" to relieve them from their obligation to provide Donna Smith with a safe place to work.

52. The crowded and overfilled space within the sales kiosk that Defendants provided Donna Smith and instructed Donna Smith to clean was unreasonably dangerous. Items like anti-fatigue floor mat when such items were repositioned to clean the floors created fall hazards. Filling the workspace with objects and structures that impeded employees from physically moving as needed to do their jobs was also hazardous.

53. All of these unreasonably dangerous conditions posed a foreseeable danger of falling and suffering serious bodily injuries to employees carrying out their job

responsibilities, including cleaning inside the kiosk.

54. At all relevant times, Defendants knew or should have known about the danger posed by requiring employees to work in a crowded and overfilled space. They know or should have known the hazards posed by items like anti-fatigue floor mat when such items were repositioned to clean the floors. And they knew or should have known the dangers posed by filling the workspace with objects and structures that impeded employees from physically moving as needed to do their jobs.

55. Defendants breached their duty to act exercise reasonable care to reduce or eliminate the risks posed by the conditions described above.

56. This created an unreasonably dangerous and unsafe workplace for Donna Smith.

57. Defendants' dangerous workplace was a proximate cause of Donna Smith's injuries and damages. Donna Smith fell and sustained permanent injuries to her spine and the rest of her body because of Defendant's unsafe workplace.

**C.    Count Three:   Gross Negligence**

58. Plaintiff's gross negligence claim is based on the facts set out in this Complaint as well as facts she anticipates developing during discovery.

59. The specific conducted listed above, complained of in the above counts, and displayed by Defendants was substantially more than ordinary carelessness, inadvertence, or laxity, but rather specifically consisted of gross negligence and

malice, as those terms are defined by law, and were done with either specific intent or with conscious indifference and reckless disregard for the rights, safety, and interests of Donna Smith.

60. Defendants' conduct when, viewed objectively from the standpoint of similarly situated companies and individuals, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Donna Smith. The conduct is such that Defendants must have had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Donna Smith. It is alleged that these acts were committed with specific intent to cause harm to Donna Smith recklessly, knowingly, or with malice.

61. For this gross negligence, Donna Smith specifically pleads for the recovery of exemplary damages as stated in this Complaint.

## AGENCY

62. Defendants are also liable for Plaintiff's injuries and damages under the theory of *respondeat superior*, as Plaintiff and Defendants' other employees were acting within the course and scope of their employment with Defendants at the time of the incident in question, the tortious acts described above were within the scope of Plaintiff's general authority, in furtherance of Defendants' business, and for the accomplishment of the object for which Plaintiff was hired by Defendants.

# DAMAGES

63.    As the result of Defendants' actions, individually and jointly, Plaintiff suffered and incurred damages, including but not limited to:

   a.    Reasonable and necessary medical expenses in the past and, in all reasonable probability, such medical expenses will continue in the future.

   b.    Lost earning capacity in the past and, in all reasonable probability, will sustained lost earning capacity in the future.

   c.    Mental anguish in the past and, in all reasonable probability, will sustain mental anguish in the future.

   d.    Physical pain and suffering in the past and, in all reasonable probability, will sustain physical pain and suffering in the future.

   e.    Physical impairment in the past and, in all reasonable probability, will sustain physical impairment in the future.

   f.    Physical disfigurement in the past and, in all reasonable probability, will sustain physical disfigurement in the future.

   g.    Exemplary damages as specifically plead above.

   h.    Pre-judgment and post judgment interest at the highest rates allowed by law.

   i.    All further relief to which Box shows he is entitled at law and in equity.

## REQUEST FOR A JURY TRIAL

64.     Plaintiff requests a jury trial on all issues so triable and contemporaneously with

the filing of this Complaint submits the applicable fee.

## PRAYER

Plaintiff asks Defendants be served with citations directing them to appear and

answer this Complaint and, when a final determination of these causes of action is made,

Plaintiff receive a judgment against these Defendants awarding her damages, costs of

court, prejudgment and post judgment interest, and all further relief to which Plaintiff

may be justly entitled.

Respectfully Submitted,


 /s/ Daniel Goldberg
Daniel Goldberg
        Attorney-in-Charge
Texas Bar No. 24052856
Federal Bar No.  866400
**THE GOLDBERG LAW OFFICE, PLLC**
2006 Commonwealth Street
Houston, Texas 77006
P: 713-942-0600
F: 713-942-0601
DJG@lawgoldberg.com

Of Counsel:

Heather Lynn Long
State Bar No. 24055865
heather@heatherlonglaw.com
**HEATHER LONG LAW PC**
4310 N. Central Expressway
Dallas, Texas 75206
Phone:  214-699-5994
*Application for Admission Forthcoming*

**ATTORNEYS FOR PLAINTIFF**